JA-QURE AL-BUKHARI              :
a/k/a JEROME RIDDICK,           :
    Plaintiff,                 :
                         :   Case No. 3:15cv322(SRU) (LEAD)
    v.                         :
                         :
COMMISSIONER SEMPLE, et al.,    :
    Defendants.                :

## RULING ON MOTIONS TO DISMISS, TO STRIKE, TO FILE SUPPLEMENTAL MEMORANDUM AND TO EXTEND DISCOVERY DEADLINE

The plaintiff, Ja-Qure Al-Bukhari ("Al-Bukhari"), a/k/a Jerome Riddick, is currently confined at MacDougall-Walker Correctional Institution. The Fourth Amended Complaint, Doc. No. 66, names as defendants an assistant attorney general, the Department of Correction and thirty-nine of its employees, and includes twenty-eight counts relating to Al-Bukhari's confinement at Garner Correctional Institution ("Garner"), Cheshire Correctional Institution ("Cheshire") and Northern Correctional Institution ("Northern"). *See id.*

Counts One through Four, Ten through Thirteen and Sixteen pertain to Al-Bukhari's placement in Administrative Segregation at Cheshire and Garner in 2014 and 2015 and the conditions of confinement in Administrative Segregation at Cheshire, Garner and Northern, including mental health treatment, during a period from March 2014 to August 2017; Counts Five through Nine pertain to deprivations of Al-Bukhari's First Amendment right to practice the Muslim religion at Garner and Cheshire in 2014 and 2015; Count Fourteen includes claims pertaining to the issuance of a disciplinary report in May 2015 for security tampering based on Al-Bukhari's unauthorized use of outgoing mail; Count Fifteen pertains to a strip search of Al-

Bukhari performed in August 2015; Count Seventeen pertains to a decision by prison staff to deny Al-Bukhari access to a sexually-explicit magazine in December 2014; and Counts Eighteen through Twenty-Eight pertain to violations and the enforcement of the terms of the 2014 Settlement Agreement and the 2015 Clarification of the terms of the agreement entered in *Riddick v. Department of Correction, et al.*, Case No. 13cv656(SRU), including a claim that the defendants refused to enforce the terms of the 2014 Settlement Agreement in retaliation for Al-Bukhari's filing of two lawsuits in 2015. *See id.* at 4, 6-39.

On May 16, 2016, I issued an order consolidating this case with *Al-Bukhari v. State of Connecticut, et al.*, Case No. 3:15cv528(SRU). *See* Order, Doc. No. 23. On May 17, 2016, the Clerk designated *Al-Bukhari v. State of Connecticut, et al.*, Case No. 3:15cv528(SRU), as a member consolidated case, closed that case and designated this case as the lead case. On July 18, 2017, pursuant to a case management status conference held on July 17, 2017, I issued an order directing the Clerk to consolidate cases *Al-Bukhari v. Department of Correction, et al.*, Case No. 3:16cv439(SRU), and *Riddick v. Semple, et al.*, Case No. 3:16cv1769(SRU), with this lead case and member case *Al-Bukhari v. State of Connecticut, et al.*, Case No. 3:15cv528(SRU), and directed Al-Bukhari to file an amended complaint in this case to assert claims pertaining to his placement in Administrative Segregation and the conditions of confinement in Administrative Segregation. *See* Order, Doc. No. 64, at 1-2. In accordance with the order, the Clerk designated *Al-Bukhari v. Department of Correction, et al.*, Case No. 3:16cv439(SRU), and *Riddick v. Semple, et al.*, Case No. 3:16cv1769(SRU), as member consolidated cases and closed those cases.

On August 15, 2017, in compliance with a July 18, 2017 order, Al-Bukhari filed a fourth amended complaint naming as defendants the Department of Correction, Assistant Attorney General Terrence M. O'Neill, Commissioner Scott Semple, District Administrators Peter Murphy and Angel Quiros, Director of Psychiatric Services Craig Burns, Director of Security Christine Whidden, Wardens Henry Falcone, Scott Erfe, Edward Maldonado, Anne Cournoyer, William Mulligan and William Faneuff, Deputy Wardens Derrick Molden, Nathan Hein and Denise Dilworth, Captains Gregorio Robles, Jr., Kyle Mitchell, Jesse Johnson and McDaniels, Lieutenant Eberle, Counselors Michael Calderon, Verrastro and Faraci, Counselor Treatment Officer Taranovich, Correctional Officers Adams, Punter, Burritt, Bernard and McGoldrich, Psychiatrists Ginny Gerbino, Maxine Cartwright and Gerard Gagne, Psychologists Mark Frayne and Guerrero, Dr. Brian Perelmutter, Health Services Administrator Sharon Brown and Social Workers Lisa Simo-Kinzer, John Doe 1, John Doe 2 and Kubeski. *See* Fourth Am. Compl., Doc. No. 66, at 1-3, 5. On May 31, 2018, Al-Bukhari moved to withdraw counts nineteen through twenty-eight of the fourth amended complaint, which pertain to violations and the enforcement of the March 2014 Settlement Agreement and the 2015 Clarification of the terms of the Agreement. *See* Mot. Withdraw, Doc. No. 117. On June 5, 2018, I granted the motion to withdraw those claims. *See* Order, Doc. No. 118.

On August 16, 2018, I issued an order directing the Clerk to deconsolidate and reopen *Riddick v. Semple, et al.*, Case No. 3:16cv1769(SRU), as the action in which I would address claims for violations and the enforcement of the 2014 Settlement Agreement and the 2015 Clarification of the terms of the agreement entered in *Riddick v. Department of Correction, et al.*,

Case No. 13cv656(SRU).  *See* Order of Deconsolidation and Dismissal of Claims, Doc. No. 124;

Order Clarifying Claims, Doc. No. 111.  I also dismissed Count Eighteen and Counts Five

through Nine of the fourth amended complaint filed in this case.  *See* Order of Deconsolidation

and Dismissal of Claims at 4-5.  I dismissed Count Eighteen because it included a claim of a

retaliatory refusal by the defendants to comply with the terms of the 2014 Settlement Agreement

and was related to Counts Nineteen through Twenty-Eight.  Count Eighteen will be pursued in

*Riddick v. Semple, et al.*, Case No. 3:16cv1769(SRU), together with Counts Nineteen through

Twenty-Eight.  I dismissed Counts Five through Nine because they related to the alleged

deprivations of Al-Bukhari's First Amendment right to practice his Muslim religion.  Those

counts will be pursued in *Al-Bukhari v. Connecticut Department Correction, et al.*, Case No.

3:16cv1267(SRU).

Member cases, *Al-Bukhari v. Correction, et al.*, Case No. 3:16cv439(SRU), and *Al-Bukhari v. Connecticut, et al.*, Case No. 3:15cv528(SRU), remain closed and consolidated with

this case.  Thus, Counts One through Four and Ten through Seventeen of the fourth amended

complaint remain pending in this case.

The defendants have filed a motion to dismiss the claims in the fourth amended

complaint and a motion to strike Al-Bukhari's sur-reply to their reply to his opposition to the

motion to dismiss.  Al-Bukhari has filed two memoranda in opposition to the motion to dismiss,

a motion to strike the motion to dismiss, a motion for leave to file a second supplemental

memorandum in opposition to the motion to dismiss, and a motion to extend the deadline for

completion of discovery.  For the reasons set forth below, the Motions to Strike (Doc. Nos. 90,

93), Motion for Extension of Time to Complete Discovery (Doc. No. 110), and Motion for Leave to File a Supplemental Memorandum (Doc. No. 113) are **denied,** and the Motion to Dismiss (Doc. No. 72) is **granted in part and denied in part.**

## I.      Motion for Leave to File Supplemental Memorandum (Doc. No. 113)

Al-Bukhari seeks permission to file a supplemental memorandum in opposition to the arguments in the motion to dismiss addressed to the breach of the settlement agreement claims asserted in Counts Eighteen through Twenty-Eight. As indicated above, Al-Bukhari has withdrawn Counts Nineteen through Twenty-Eight of the amended complaint, the court has dismissed Count Eighteen of the amended complaint, and the court has informed Al-Bukhari that he may pursue Counts Eighteen through Twenty-Eight in *Riddick v. Semple, et al.*, Case No. 3:16cv1769(SRU). Because Counts Eighteen through Twenty-Eight are no longer pending in this matter, the motion for leave to file a supplemental memorandum in opposition to arguments addressed to those counts is **denied as moot**.

## II.      Motions to Strike (Doc. Nos. 90, 93)

Al-Bukhari seeks to strike the motion to dismiss to the extent that it is addressed to state law claims in the amended complaint, in particular the settlement/breach of contract claims. The defendants seek to strike Al-Bukhari's sur-reply to their reply to his opposition to the motion to dismiss because it does not comply with Local Rules 7(b) & (d).

Federal Rule of Civil Procedure 12(f) provides that a court may strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Furthermore, motions to strike are generally disfavored in the Second Circuit. *See Bass v. Miss*

*Porter's School*, 2010 WL 122602, at *1 (D. Conn. Jan. 5, 2010), *D'Agostino v. Housing Authority of City of Waterbury*, 2006 WL 1821355, at *1 (D. Conn. June 30, 2006), *Gssime v. Nassau County*, 2014 WL 810876, at *2 (E.D.N.Y. Feb. 28, 2014).  The motions to strike do not satisfy Rule 12(f), and Al-Bukhari is granted permission, *nunc pro tunc*, to file a sur-reply. Accordingly, the motion to strike the defendants' motion to dismiss and memorandum in support of the motion, and the motion to strike Al-Bukhari's sur-reply to defendants' reply to the memorandum in opposition to the motion to dismiss are **denied**.

## III. Motion to Dismiss (Doc. No. 72)

The defendants filed their motion to dismiss the claims asserted against them in the fourth amended complaint prior to the withdrawal of counts nineteen through twenty-eight and the dismissal of counts five through nine and eighteen.  Thus, some of the arguments in the motion to dismiss are moot, and I will only consider the motion to dismiss to the extent that it addresses the remaining counts in the fourth amended complaint.

### A. Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept well-pleaded factual allegations as true and "draw[ ] all reasonable inferences in the non-movant's favor."  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).  In addition to the facts alleged in the complaint, the court may also consider "documents attached [as exhibits] to the complaint[,] . . . documents incorporated by reference in the complaint[,] . . . matters of which judicial notice may be taken, or documents either in plaintiff's possession or of

which plaintiff[] had knowledge and relied on in bringing suit." *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (internal quotation marks and citations omitted).

In its review of the complaint, the court applies a plausibility standard, which is guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the requirement that the court accept as true the allegations in the complaint "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Second, to withstand a motion to dismiss, the complaint must state a plausible claim for relief. *Id.* at 679. Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) ("[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest'") (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**B.     Facts**

The defendants' motion to dismiss includes arguments addressed to the allegations in counts ten, fourteen, fifteen and seventeen of the fourth amended complaint. Al-Bukhari alleges the following facts related to the remaining counts, which are assumed to be true for the purposes of this motion.

On June 22, 2015, Al-Bukhari was confined in F-Unit at Garner. *See* Am. Compl., [ECF No. 66], at 14 ¶ 85. During the evening of June 22, 2015, Al-Bukhari fasted as part of his observance of Ramadan. *See id.* Al-Bukhari intended to break his fast at 8:30 p.m. *See id.* ¶ 87. Al-Bukhari repeatedly asked Officers Punter, Bernard, and McGoldrich to bring him his Ramadan food tray so that he could break his fast at 8:30 p.m., but they refused to do so because they were engaged in finishing paperwork. *See id.* ¶¶ 88-91. Al-Bukhari received his Ramadan food tray at 9:00 p.m. *See id.* at 15 ¶ 94.

On one occasion at some point on or after June 22, 2015 during Correctional Officer Punter's tour of Al-Bukhari's housing unit, Al-Bukhari observed Officer Punter open his "breakfast bag" and turn away from him. *See id.* at 15 ¶ 93. When Al-Bukhari received his "breakfast bag" he noticed that someone had poked his or her finger in the peanut butter container and had crumpled the piece of bread. *See id.* ¶ 95. Al-Bukhari believes Officer Punter was the person who had "tampered with" the items in his "breakfast bag." *See id.*

On May 22, 2015, Correctional Treatment Officer Taranovich issued a disciplinary ticket to Al-Bukhari for security tampering in connection with Al-Bukhari's alleged attempt to send mail out of the prison facility in an unauthorized envelope. *See id.* at 21 ¶ 145. The report accused Al-Bukhari of using a pre-addressed and stamped envelope that his attorney had given

him to correspond with another individual who was not an attorney. *See id.* at 23 ¶ 153. Al-Bukhari used the same type of envelopes to correspond with this court, the Office of the Claims Commissioner, and with his sister in May, June, and July 2015, but was not disciplined. *See id.* ¶ 154.

On June 3, 2015, Al-Bukhari participated in a disciplinary hearing in connection with the issuance of the disciplinary report for security tampering. *See id.* at 22 ¶ 147. Al-Bukhari's advocate failed to assist him in preparing a defense, issued a statement indicating that he should be found guilty of the offense, and did not show up at the hearing. *See id.* Lieutenant Eberle was the disciplinary hearing officer. *See id.* at 23 ¶ 156. After the hearing, Lieutenant Eberle found Al-Bukhari guilty of the offense with which he had been charged and sanctioned him to sixty days loss of social mail privileges, thirty days loss of recreation and fifteen days of punitive segregation. *See id.* at 22 ¶ 149. Lieutenant Eberle did not consider Al-Bukhari's history of serious mental illness in determining the type of sanctions to impose on Al-Bukhari. *See id.* at 23 ¶ 156. Dr. Guerrero and Social Workers Kuzebski, John Doe 1, and John Doe 2 did not evaluate Al-Bukhari prior to the disciplinary hearing to determine whether his mental illness played a part in "him having misbehavior or acting out before subjecting him to the disciplinary process." *See id.* ¶ 157. Al-Bukhari was not able to send mail to or receive mail from his family or a clergy member while he was on loss of mail privileges, but he could send mail to and receive mail from attorneys. *See id.* at 22 ¶ 150.

On August 25, 2015, upon Al-Bukhari's return to Garner after participating in a hearing held in a case pending in this court, Lieutenants Hurdle and Camacho subjected him to a strip

search.  *See id.* at 23-24 ¶ 159; at 24 ¶ 163.  Those lieutenants indicated that the "big dog" had ordered the strip search.  *See id.* at 24 ¶ 163.  Al-Bukhari understood "big dog" to be a reference to Warden Falcone.  *See id.* ¶ 164.

On December 11, 2014, pursuant to Department of Correction policy, Warden Falcone denied Al-Bukhari possession of his "Black Men" publication because the publication was sexually explicit.  *See id.* at 26 ¶ 179.  Commissioner Semple, Wardens Falcone, Erfe and Faneuff have denied Al-Bukhari and other inmates all types of sexually explicit and commercially sexually explicit materials, including photographs and publications.  *See id.* ¶ 180.

### C.      Discussion

The defendants argue in their Motion to Dismiss that: (1) the claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment; (2) Al-Bukhari is collaterally estopped from asserting the claims in Count Seventeen and he has no standing to assert claims on behalf of other inmates; (3) the allegations in Counts Ten, Fourteen, Fifteen and Seventeen fail to state a claim upon which relief may be granted; and (4) the allegations in Counts Ten and Eleven fail to state a claim of  intentional infliction of emotional distress.  Al-Bukhari has filed two memoranda in opposition to the motion to dismiss. Doc. Nos. 80, 83.

### 1.      Department of Correction

Al-Bukhari names the Department of Correction as a defendant.  The Department of Correction is a state agency, which is not considered to be a person within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 70–71 (1989).  In addition,

state agencies are protected by Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Thus, the Department of Correction is not susceptible to liability under section 1983. *See McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) (Eleventh Amendment bars suits for money damages or injunctive relief against state agencies). All section 1983 claims against the Department of Correction are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case at any time if the court determines that [the action] is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.").

### 2. Official Capacity Claims – Money Damages

The defendants move to dismiss the claims against them in their official capacities for money damages. The complaint includes requests for compensatory, punitive and special damages. Al-Bukhari sues the defendants in both their individual and official capacities. To the extent that Al-Bukhari seeks monetary damages from the defendants in their official capacities, that claim is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan,* 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The claim for monetary damages against the defendants in their official capacities is **dismissed**.

### 3. Count Ten

#### a. Unsanitary Food

Al-Bukhari alleges in Count Ten that on one occasion he received a breakfast bag from Officer Punter containing a crumbled a piece of bread and a contaminated peanut butter container. Al-Bukhari suspects that Officer Punter poked his finger in the peanut butter container and crumbled the piece of bread. Al-Bukhari contends that this conduct constitutes cruel and unusual punishment. Officer Punter argues that these allegations do not state a claim of a violation of Al-Bukhari's Eighth Amendment rights.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires

12

that an inmate allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

The Second Circuit has held that the Eighth Amendment requires "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks and citation omitted). Al-Bukhari does not allege that he suffered any ill effects from either eating the food items or not eating the food items that were in the breakfast bag that Officer Punter provided to him on one occasion. Nor does Al-Bukhari allege that prison officials failed to provide him with lunch or dinner that day or breakfast, lunch and dinner on any day following that day.

The deprivation of nutritionally adequate or inedible food at one meal does not state an Eighth Amendment claim. *See Robles*, 725 F.2d at 15 (an occasional deprivation of meals and eating utensils cannot rise to a constitutional violation); *Hankerson v. Nassau County Correctional Facility*, No. 12-CV-5282(SFJ)(WDW), 2012 WL 6055019, at *4 (E.D.N.Y. Dec. 4, 2012) (inmate's claim that "he missed a single meal falls far short of a substantial deprivation of food and does not rise to the level of a constitutional deprivation"); *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (denial of one noon meal does not state Eighth Amendment claim); *Waring v. Meachum*, 175 F. Supp. 2d 230, 240-41 (D. Conn. 2001) (no Eighth Amendment claim where inmates missed one or two meals and there was no indication that future meals were missed); *Warren v. Irvin*, 985 F. Supp. 350, 356-57 (W.D.N.Y. 1997)

13

(deprivation of water and evening meal on one day were not sufficiently serious to meet objective prong of Eighth Amendment standard). The allegation that Officer Punter "tampered with" the food items that were provided as part of Al-Bukhari's breakfast meal on one occasion does not state a claim of a serious deprivation of a life necessity. The motion to dismiss is **granted** with respect to Al-Bukhari's Eighth Amendment claim of food tampering against Officer Punter in Count Ten of the fourth amended complaint.

### b.    Intentional Infliction of Emotional Distress

Al-Bukhari includes a claim of intentional infliction of emotional distress in Count Ten of the fourth amended complaint.[1] He states that he suffered anxiety, humiliation and emotional distress as a result of the refusal of Officers Punter, Bernard, and McGoldrich to bring him his Ramadan food tray in a timely manner on June 22, 2015 and as a result of Officer Punter crumbling his bread and poking his finger in his peanut butter container on another date.

In Connecticut, a claim of intentional infliction of emotional distress requires a plaintiff to show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Reyes v. City of Bridgeport,* 152 Conn. App. 528, 543 n.13 (2014) (internal quotation marks and citation

---

[1] The defendants contend that Al-Bukhari also asserts a claim of intentional infliction of emotional distress in Count Eleven, under which he alleges "Cruel and Unusual Punishment by Denying Plaintiff the Basic Hygiene Items While in Segregation." Although Al-Bukhari claims that the defendants' actions caused him "anxiety, humiliation, bleeding gums, fear, and physical injury," he does not specifically claim intentional infliction of emotional distress, which he did in

omitted). The initial determination of "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is for the court." *Id.* Conduct is considered to be "outrageous in character" and "extreme in degree" when it "exceeds all bounds usually tolerated by decent society." *Id.*

Neither the actions of Officers Punter, Bernard, and McGoldrich in providing Al-Bukhari with his Ramadan food tray one-half hour after he requested it, nor the act of Officer Punter tampering with Al-Bukhari's breakfast meal on one occasion constitute conduct that is sufficiently outrageous or extreme enough to be considered "atrocious" or "utterly intolerable in a civilized community." *Id.* Thus, the motion to dismiss the claim of intentional infliction of emotional distress as asserted in Count Ten against Officers Punter, Bernard, and McGoldrich is **granted**.

### 4. Retaliation Claims– Counts Fourteen and Fifteen

Al-Bukhari describes Counts Fourteen and Fifteen as retaliation claims. *See* Fourth Am. Compl. at 21, 23. A plaintiff asserting First Amendment retaliation by a defendant must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Further, the Second Circuit treats prisoner retaliation

---

Count Ten.

claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 352; *Dorsey v. Fisher*, 468 F. App'x. 25, 27 (2d Cir. 2012).

### a.      Retaliatory Disciplinary Report

In Count Fourteen, Al-Bukhari alleges that on May 22, 2015, Correctional Treatment Officer Taranovich issued him a disciplinary report for security tampering in connection with his use of a self-addressed, pre-stamped envelope to send a letter to someone other than his attorney. Al-Bukhari claims that he participated in a disciplinary hearing, but his advocate was not helpful to him. After the hearing, Lieutenant Eberle found Al-Bukhari guilty of the charge and sanctioned him to sixty days loss of social mail privileges, thirty days loss of recreation and fifteen days of punitive segregation. Al-Bukhari contends that Officer Taranovich issued him the disciplinary report and Lieutenant Eberle imposed sanctions against him in retaliation for his attempt to use the mail to communicate with others.

The defendants argue that the allegations are conclusory and, therefore, do not state a valid First Amendment retaliation claim. I agree. Al-Bukhari concedes that he used an envelope given to him by his attorney, which was stamped and addressed to the attorney, to send a letter to another person who was not his attorney. Officer Taranovich issued the disciplinary report because of, not in retaliation for, Al-Bukhari's use of an envelope in an unauthorized manner to send a letter to a non-attorney. Al-Bukhari alleges that he participated in the disciplinary hearing held to address the disciplinary charge and was given the opportunity to rebut the charge against

him.  There are no facts to suggest that the disciplinary report was issued or that sanctions were imposed in retaliation for Al-Bukhari's exercise of his right to send mail.  Nor are there allegations to suggest that the issuance of a disciplinary report for using an envelope in an improper manner would deter an inmate from using the mail in the future to send letters to friends, family or an attorney.

Conclusory allegations are insufficient to state a retaliation claim under the First Amendment.  *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations.") (internal quotation marks and citation omitted); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("A complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone.") (internal quotation marks and citation omitted)).  Accordingly, the motion to dismiss the retaliation claim asserted against Counselor Treatment Officer Taranovich and Lieutenant Eberle in Count Fourteen is granted.

In Count Fourteen, Al-Bukhari alleges that the disciplinary report for security tampering was too vague to put Al-Bukhari on notice of the specific charge against him.  Further, Al-Bukhari asserts allegations regarding: the hearing held by Lieutenant Eberle and his decision finding Al-Bukhari guilty of  the charge of security tampering; the nature and degree of the sanctions imposed by Lieutenant Eberle pursuant to guilty finding; the impact of the sanctions imposed by Lieutenant Eberle on Al-Bukhari's use of the mail to contact his family and a clergy member; and the failure of Dr. Guerrero and Social Workers Kuzebski, John Doe 1, and John

Doe 2 to evaluate Al-Bukhari prior to the disciplinary hearing to determine whether his mental health issues played a part in his having engaged in misbehavior and acting out. Those allegations appear to be related to Al-Bukhari's claims in Count Thirteen regarding the defendants' alleged punishment of Al-Bukhari because of his mental illness. *See* Fourth Am. Compl. ¶¶ 137-39, 142-43. Because those allegations relate to the claims in Count Thirteen, which the defendants have not addressed in their Motion to Dismiss, the allegations will proceed.

**b.      Retaliatory Strip Search**

In Count Fifteen, Al-Bukhari contends that on August 25, 2015, upon his return to Garner after participating in a hearing held in another case pending before me, Lieutenants Hurdle and Camacho subjected him to an intrusive strip search pursuant to an order from Warden Falcone. Al-Bukhari contends that Warden Falcone ordered the more intrusive strip search in retaliation for my decision, rendered at the hearing held earlier that day, to grant Al-Bukhari's motions to reopen this case and one other federal case, and to permit him to file a new case. He states that he was not strip-searched in the same manner upon his return from court three months earlier. It is unclear whether Al-Bukhari intends to assert this claim against Hurdle, Camacho, and Falcone, or only Falcone. Accordingly, I will construe the allegation liberally to include all three defendants.

Pursuing a court action or filing a new lawsuit constitutes protected First Amendment activities. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). An intrusive strip search conducted on one occasion could plausibly constitute adverse action. *See Grohs v. Holmes*, No. CIV. 13-7870 KM MAH, 2014 WL 4896834, at *9 (D.N.J. Sept. 30, 2014) ("I find that the

retaliation claim against Fratalone may proceed past the screening stage. Mr. Grohs has alleged constitutionally protected conduct in the form of the filing of his civil complaint . . . [and] Mr. Grohs's allegations of the partial strip search conducted on June 2, 2013 could rise to the level of an adverse action.").

There are no facts, however, to suggest that Falcone, Hurdle, and/or Camacho were present in court for Al-Bukhari's hearing, that they were aware of the cases that were the subject of the court hearing, or even what the hearing was about. Further, there is nothing to suggest that they were defendants in either of the two cases that were re-opened, or that they might be listed as defendants in the new complaint that Al-Bukhari filed after the hearing. Nor are there facts to suggest that they became aware of what had transpired during the court proceeding prior to Al-Bukhari's return to Garner later that same day. Moreover, Al-Bukhari does not allege that the strip search performed by Lieutenants Hurdle and Camacho was unauthorized under State of Connecticut Department of Correction Administrative Directive 6.7, Searches Conducted in Correctional Facilities.[2] Rather, Al-Bukhari states that the strip search was not the type of strip search "normal[ly]" performed on inmates returning from court. Furthermore, there are no allegations of any statements made by Warden Falcone, Hurdle, and/or Camacho that would suggest that the strip search was retaliatory.

---

[2] Administrative Directive 6.7 (effective June 29, 2018) is available at http://portal.ct.gov/media/-/DOC/Pdf/Ad/ad0906pdf.pdf. The version of Administrative Directive 6.7 that was in effect at the time of the strip search conducted on Al-Bukhari, August 25, 2015, may be found as an exhibit filed in support of the motion for summary judgment in *Shehan v. Erfe, et al.*, Case No. 3:15cv1315(MPS) (Local Rule 16(a)1 Statement, Ex. E, [ECF No. 59-7], Administrative Directive 6.7 (effective August 15, 2014)).

Al-Bukhari has simply concluded that the strip search must have been retaliatory because it was different from the "normal" strip-search that he underwent upon return from court on a prior date, more than three months before August 25, 2015. This unsupported conclusion of retaliatory intent does not meet the causal connection component of a retaliation claim. *See Dorsey v. Fisher*, 468 F. App'x. 25, 27 (2d Cir. 2012) ("Without more, where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation."); *Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *7 (S.D.N.Y. Oct. 23, 2017) ("While there may exist instances in which retaliation claims may be established against defendants who were not personally involved in the original incident, at a minimum, plaintiffs must allege that such defendants have personal knowledge of the protected activity that purportedly motivated the retaliatory conduct."). The motion to dismiss is **granted** with respect to the First Amendment retaliation claim asserted against Warden Falcone, Hurdle, and Camacho in Count Fifteen.

### 5.    Confiscation of Sexually Explicit Material – Count Seventeen

Al-Bukhari claims that on December 11, 2014 at Garner, pursuant to Department of Correction policy, Warden Falcone confiscated a magazine sent to him because it contained sexually explicit material. Al-Bukhari generally contends that Commissioner Semple and Wardens Falcone, Erfe, and Faneuff have refused to permit him and other inmates to possess any type of sexually explicit or commercially sexually explicit photographs and publications. He asserts that the policy pursuant to which the magazine was confiscated from him on December 11, 2014, and pursuant to which he and other inmates have not been permitted to possess

publications and photographs exhibiting nudity or sexually explicit images, is vague and arbitrary as applied to him and other inmates. The court construes these allegations as a claim that the confiscation of his magazine in December 2014 and the rejection of publications and photographs on other occasions pursuant to the Department of Correction's policy on sexually explicit materials violated his First Amendment right to free speech and expression.

The defendants assert three arguments in connection with the claim in Count Seventeen. They initially argue that this First Amendment claim is barred by the doctrine of collateral estoppel. In support of their collateral estoppel argument, the defendants rely on a decision denying a motion for preliminary injunction in *Ortiz v. Arnone*, Case No. 3:11cv1793(SRU), on the ground that the plaintiff in that action had not shown a likelihood of success on the merits of his First Amendment claim challenging the Connecticut Department of Correction's policy on the retention of sexually explicit materials by inmates.

The doctrine of "[c]ollateral estoppel, or issue preclusion ... provides that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994)). Collateral estoppel is applicable under the following circumstances:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Epperson v. Entertainment Express, Inc.,* 242 F.3d 100, 108 (2d Cir. 2001) (internal quotation marks and citation omitted).  Although the party who is attempting to assert collateral estoppel need not have been a party in the prior state action, the party against whom collateral estoppel is asserted must have had the opportunity to litigate the merits of the issue in the prior action.  *See Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 329 (1971).

Al-Bukhari was not a party to *Ortiz v. Arnone*, Case No. 3:11cv1793(SRU). Furthermore, the ruling cited by the defendants disposed of a motion for preliminary injunction. It was not a ruling that decided the merits of the First Amendment claim.  In September 2016, the court consolidated *Ortiz v. Arnone*, Case No. 3:11cv1793(SRU), with the lead case of *Reynolds v. Arnone, et al.*, Case No. 3:13cv388(SRU), which remains pending and is proceeding to trial. *See id.*

Because Al-Bukhari did not fully and fairly litigate the issue raised in the motion for preliminary injunction filed in *Ortiz v. Arnone*, Case No. 3:11cv1793(SRU), and the First Amendment claim directed to the Department of Correction's policy governing inmates' retention or possession of sexually explicit material has not been necessarily determined, the doctrine of collateral estoppel is not applicable to Al-Bukhari's First Amendment claim of improper confiscation of a magazine under that same Department of Correction policy.

In their second argument, the defendants contend that the Al-Bukhari has failed to allege how the Department of Correction's policy on sexually explicit materials violates his constitutional rights or harms him.   They argue that the standard set forth in *Turner v. Safley*,

482 U.S. 78, 89 (1987), is applicable to this claim and that Al-Bukhari has failed to meet the standard.

Inmates do not forfeit all the protections afforded by the Constitution when they enter a correctional facility. *See Turner*, 482 U.S. at 93. The needs of correctional facilities and the nature of confinement, however, "impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Thus, the plaintiff retains only "those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner*, 482 U.S. at 95 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

In *Turner*, the Supreme Court articulated four factors to be considered in determining whether a prison regulation infringes on an inmate's constitutional rights. Those factors are: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmate has an alternative way to exercise the constitutional right; 3) the impact that accommodation of the right will have on other inmates, correctional staff and prison resources; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Id.* at 89-91.

In support of their argument that there is valid connection between the Department of Correction's policy on sexually explicit materials and a legitimate governmental interest in promoting safety and security, the defendants essentially rely on the court's review of the Department of Correction's policy as it applied to the claim raised in the motion for preliminary injunction filed in *Ortiz v. Arnone*, Case No. 3:11cv1793(SRU). The defendants further contend

that other courts have upheld similar prison regulations banning sexually explicit materials. Although courts have upheld regulations banning possession of sexually explicit materials by inmates, they have done so when reviewing motions for injunctive relief, or at summary judgment or trial, not on the initial review of the complaint or on a motion to dismiss. The standards for granting motions for preliminary injunction and for summary judgment are more difficult to meet than the plausibility standard applicable to the review of allegations in a complaint.

Although the court denied the motion for preliminary injunction in *Ortiz v. Arnone*, Case No. 3:11cv1793(SRU), that case has been consolidated with another lead case, *Reynolds v. Arnone, et al.*, Case No. 3:13cv388(SRU), which is proceeding to trial on the merits of the First Amendment claim. At this preliminary stage when reviewing the allegations in the fourth amended complaint pursuant to the Rule 12(b)(6) standard, the court cannot evaluate the applicablility of the *Turner* factors because additional information and evidence are needed. Accordingly, the court concludes that the allegations in count seventeen state a plausible violation of Al-Bukhari's First Amendment rights. The motion to dismiss is **denied** with respect to the First Amendment claim asserted by Al-Bukhari on his own behalf in Count Seventeen.

The defendants' third argument addresses Al-Bukhari's attempt to assert claims on behalf of other inmates who may have had magazines or other publications confiscated pursuant to the Department of Correction's ban on materials containing sexually explicit language or photographs. Courts have held consistently that individuals, including inmates, do not have standing to sue on behalf of other inmates or individuals. *See Singleton v. Wulff*, 428 U.S. 106,

114 (1976) ("[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party") (internal quotation marks and citations omitted); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential [limit on standing is the] principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties."); *Rainey v. Ponte*, No. 16 CIV. 6336 (ER), 2017 WL 3267746, at *3 (S.D.N.Y. July 31, 2017) (dismissing inmate's claims against correctional officers and officials due to lack of standing because inmate did "not allege that he ha[d] been personally harmed[] and because a *pro se* plaintiff cannot bring claims on behalf of others"); *Swift v. Tweddell*, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008) (holding inmates "lack[] standing . . . to assert claims on other inmates' behalf").

As an inmate and a non-lawyer, Al-Bukhari may only assert claims and requests for relief that are personal to him. The motion to dismiss is **granted** with respect to the First Amendment claims asserted in Count Seventeen on behalf of other inmates.

## IV. Motion for Extension of Time to Conduct Discovery (Doc. No. 110)

On July 18, 2017, the court entered an order directing the parties to complete discovery by April 13, 2018. *See* Order, (Doc. No. 64). Al-Bukhari claims that the defendants have refused to comply with discovery until the court rules on their motion to dismiss. He seeks an extension of the deadline for completion of discovery until January 8, 2019. The defendants did not obtain an order from the court staying discovery, so their refusal to engage in discovery was unwarranted. Although the better course under the circumstances would have been for Al-Bukhari to file a Motion to Compel, the motion for extension of time to

conduct discovery until January 8, 2019 is **granted**. Summary judgment motions, if any, shall be filed by February 8, 2019.

### Conclusion

The Motion for Leave to File Supplemental Memorandum (**Doc. No. 113**) is **DENIED as moot** and the Motions to Strike (**Doc. Nos. 90, 93**) are **DENIED**. The Motion for Extension of Time to Conduct Discovery until January 8, 2019 (**Doc. No. 110**) is **GRANTED**.

The Motion to Dismiss, (**Doc. No. 72**) is **GRANTED** in substantial part. The claim for monetary damages against the defendants in their official capacities; the Eighth Amendment claim of food tampering against Officer Punter in Count Ten; the state law claim of intentional infliction of emotional distress against Officers Punter, Bernard, and McGoldrich in Count Ten; the First Amendment retaliation claim asserted against Correctional Treatment Officer Tarnovich and Lieutenant Eberle in Count Fourteen; the First Amendment retaliation claim asserted against Warden Falcone and Lieutenants Hurdle and Camacho in Count Fifteen; and the First Amendment claim asserted on behalf of other inmates in Count Seventeen are all dismissed.

Thus, the claims in Counts Ten and Fifteen are dismissed; the First Amendment retaliation claim in Count Fourteen is dismissed; the First Amendment speech claim asserted on behalf of other inmates in Count Seventeen is dismissed; all claims against the defendants in their official capacities are dismissed; and all claims against defendants Correctional Officers Punter, Bernard, and McGoldrich are dismissed.

The claim against the Department of Correction is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). **The Clerk shall terminate the Department of Correction, Correctional**

**Officer Punter, Correctional Officer Bernard, and Correctional Officer McGoldrich as defendants.**

The following counts or claims within counts set forth in the Fourth Amended Complaint, (Doc. No. 66) will proceed against defendants Semple, Quiros, Burns, Falcone, Erfe, Maldonado, Cournoyer, Mulligan, Faneuff, Molden, Hein, Dilworth, Robles, Mitchell, Johnson, McDaniels, Eberle, Calderon, Verrastro, Taranovich, Gerbino, Cartwright, Gagne, Frayne, Guerrero, Perelmutter, Brown, Simo-Kinzer, Doe 1, Doe 2 and Kubeski: Count One, Count Two, Count Three, Count Four, Count Eleven, Count Twelve, Count Thirteen, Count Sixteen, the remaining claims in Count Fourteen, and the remaining claim in Count Seventeen. Because **AAG O'Neill, Peter Murphy, Christine Whidden, Counselor Faraci, Correctional Officer Adams, and Correctional Officer Burritt** are not implicated in the claims that remain in Counts One through Three and Eleven through Fourteen, Sixteen, or Seventeen, **the Clerk shall terminate them as defendants.**

(2)    The discovery period is extended to January 8, 2019. Motions for summary judgment, if any, shall be filed no later than February 8, 2019.

(3)    The court notes that the two John Doe Social Workers have not been served because Al-Bukhari has made no effort to identify either defendant by his first and last name. The court will permit the plaintiff 30 days to identify those two defendants and to file a notice with the court indicating their first and last names in order to enable the U.S. Marshal to serve them with a copy of the Fourth Amended Complaint. If Al-Bukhari fails to file a notice within the time specified, the claims against Doe 1 and Doe 2 will be dismissed.

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge